**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| **SANDRA PEREZ,** | ) | **NO. CV 20-6687 KS** |
| **Plaintiff,** | ) | |
| **v.** | ) | **AMENDED[1]  MEMORANDUM  OPINION** |
| | ) | **AND ORDER** |
| **KILOLO KIJAKAZI, Acting** | ) | |
| **Commissioner of Social Security,** | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**INTRODUCTION**

Sandra Perez ("Plaintiff") filed a Complaint on July 27, 2020, seeking review of the denial of her applications for Disability Insurance benefits ("DIB") and Supplemental Security Insurance ("SSI").  (Dkt. No. 1.[2])  On August 26, 2020, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate

---

[1] The Court issues this Amended Memorandum Opinion and Order in response to Plaintiff's Motion for Clarification filed on February 22, 2022.  (Dkt. No. 28.)  The Court has amended the original Memorandum Opinion and Order as follows: on page 20, line 22, the reference to Dr. Maze is corrected to reference Dr. Hannani.

[2] For ease of reference, the Court cites to the document and page numbers provided by its electronic case management system.

1

Judge.  (Dkt. Nos. 11-13.)  On September 8, 2021, the parties filed a Joint Stipulation ("Joint Stip.").  (Dkt. No. 23.)  Plaintiff seeks an order reversing the final decision of the Administrative Law Judge ("ALJ") and awarding benefits or, in the alternative, remanding for further proceedings.  (Id. at 30.)  The Commissioner requests that the ALJ's decision be affirmed or, in the alternative, remanded for further proceedings.  (*Id.* at 31.)  The Court has taken the matter under submission without oral argument.

## SUMMARY OF PRIOR ADMINISTRATIVE AND JUDICIAL PROCEEDINGS

On January 17, 2014, Plaintiff, who was born on June 15, 1963, filed an application for DIB for a period of disability; she alleged disability commencing November 7, 2012 due to a bulging disc, pinched nerve, and "neck and back problems."  (Dkt. No. 19-6 at 5-6.) After the Commissioner initially denied Plaintiff's application (Dkt. No. 19-4), Plaintiff requested a hearing.  (Dkt. No. 19-5 at 6-7.)  ALJ Lesley Troope held a hearing on January 12, 2016.  (Dkt. No. 19-3 at 42-81.)  Plaintiff and a vocational expert (the "VE") testified. (*Id.*)  On February 8, 2016, the ALJ issued an unfavorable decision to Plaintiff.  (Dkt. No. 19-3 at 20-40.)  On June 9, 2017, the Appeals Council denied Plaintiff's request for review. (*Id.* at 2-4.)

On August 4, 2017, Plaintiff filed an application for SSI.  (Dkt. No. 19-12 at 27.)  On December 28, 2018, this Court reversed the Commissioner's decision regarding DIB and remanded for further proceedings.  *See Perez v. Berryhill*, 17-cv-05800-KS; (Dkt. No. 19-13 at 77-99.)  On March 12, 2020, a new hearing was held before ALJ Cynthia Floyd.  (Dkt. No. 19-12 at 36-64.)  Again, Plaintiff and a VE testified.  (*Id.*)  On April 24, 2020, the ALJ issued an unfavorable decision to Plaintiff as to both her DIB and SSI and applications.  (*Id.* at 2-27.)  As the parties correctly state in the Joint Stipulation, "Perez did not file exceptions within[] 60 days of the ALJ decision.  The Appeals Council did not take jurisdiction over the decision after remand.  The ALJ decision became the final decision of the Commissioner

1   after remand on June 23, 2020.   42 U.S.C. § 405(h).   This timely civil action followed."
2   (Dkt. No. 23 at 3.)

3

4   **SUMMARY OF MOST RECENT ADMINISTRATIVE DECISION**

5

6   ALJ Floyd found that Plaintiff met the insured status requirements of the Social
7   Security Act through December 31, 2017.  (Dkt. No. 19-12 at 9.)  She found that Plaintiff
8   had not engaged in substantial gainful activity since November 7, 2012, the alleged disability
9   onset date.  (*Id.*)  The ALJ determined that Plaintiff had the severe impairments of cervical
10  and lumbar degenerative disc disease, left knee internal derangement, and obesity.  (*Id.*)  The
11  ALJ concluded that Plaintiff did not have an impairment or combination of impairments that
12  met or medically equaled the severity of an impairment listed in 20 C.F.R. part 404, subpart
13  P, appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925,
14  416.926).  (*Id.* at 16.)  The ALJ determined that Plaintiff had the residual functional capacity
15  ("RFC") to perform light work as defined in 20 CFR § 404.1567(b) and 416.967(b), except
16  that she could lift and/or carry 20 pounds occasionally and 10 pounds frequently, and that
17  she could stand or walk 6 hours and sit 6 hours in an 8-hour workday.  The ALJ also
18  concluded that Plaintiff could "frequently perform fine and detailed movements with the
19  arms fine and detailed movements with the leg."  (*Id.* at 17.)

20

21  The ALJ found that Plaintiff was capable of performing her past relevant work as a
22  medical biller and coder (DOT[3] 079.262-014), as such work "does not require the
23  performance of work-related activities precluded by [Plaintiff's RFC] (20 CFR [§§]
24  404.1565 and 416.965)."  (*Id.* at 25.)  Additionally, the ALJ found that in addition to past
25  relevant work, there were other jobs existing in significant numbers in the national economy
26  that Plaintiff could perform considering Plaintiff's age, education, work experience, and

27

---

28  [3]      "DOT" refers to the *Dictionary of Occupational Titles*.

RFC. (*Id.*) The ALJ also found that transferability of job skills was not material to the determination because the Medical-Vocational Rules supported a finding that Plaintiff was "not disabled," whether or not she had transferable job skills. (*Id.* at 26.)

The ALJ then determined that, considering Plaintiff's age, education, work experience, and RFC, Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. (*Id.*) Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from the alleged onset date through the date of the ALJ's decision. (*Id.*)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); *Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

4

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citations omitted).

## DISCUSSION

Plaintiff raises four issues: (1) whether the ALJ in the most recent disability hearing violated the law of the case or the rule of mandate; (2) whether the ALJ properly considered Plaintiff's testimony and statements; (3) whether the ALJ properly considered Plaintiff's ability to perform past relevant work; and (4) whether the ALJ properly considered the ability to perform other work. (Dkt. No. 23 at 5.) For the reasons discussed below, the Court concludes that issue no. 2 warrants reversal of the ALJ's decision and remand for further administrative proceedings consistent with this Order.

## I.    Reassessment Of Plaintiff's Severe Impairments

Plaintiff contends that the ALJ failed to comply with the district court's remand order by reassessing the issue of Plaintiff's severe impairments and consequential change to the limitations in Plaintiff's RFC. (Dkt. No. 23 at 5-6, 12-13.)

//

//

### A.   Applicable Law

"Both the law of the case doctrine and the rule of mandate apply in the social security context." *Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016). "The law of the case doctrine generally prohibits a court from considering an issue that has already been decided by that same court or a higher court in the same case." *Id*. (citing *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012)). In the Social Security context, prior findings by an ALJ such as, for example, a step four determination that a claimant cannot perform his past relevant work generally "should not be reconsidered under the law of the case doctrine." *Id*. "The doctrine of law of the case comes into play only with respect to issues previously determined." *Quern v. Jordan*, 440 U.S. 332, 347 n.18 (1979). In other words, "the issue in question must have been decided explicitly or by necessary implication in the previous disposition." *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000). "Application of the doctrine is discretionary." *Id*. Thus, even if the doctrine applies, a court may exercise its discretion to depart from it because of exceptions that arise "when the evidence on remand is substantially different, when the controlling law has changed, or when applying the doctrine would be unjust." *Stacy*, 825 F.3d at 567 (citing *Merritt v. Mackey*, 932 F.2d 1317, 1320 (9th Cir. 1991)).

"The rule of mandate is similar to, but broader than, the law of the case doctrine." *Stacy*, 825 F.3d at 567-68 (quoting *United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995)). "The rule provides that 'any district court that has received the mandate of an appellate court cannot vary or examine that mandate for any purpose other than executing it.'" *Stacy*, 525 F.3d at 568 (quoting *Hall*, 697 F.3d at 1067). "The district court may, however, 'decide anything not foreclosed by the mandate.'" *Id*. In the Social Security context, "[d]eviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review." *Sullivan v. Hudson*, 490 U.S. 877, 886 (1989).

6

### B.    Analysis

ALJ Troope, who presided over Plaintiff's original January 12, 2016 hearing, found at step one that Plaintiff met the insured status requirements of the Social Security Act, and at step two that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of November 7, 2012.  (Dkt. No. 19-3 at 25.)  At step three, ALJ Troope determined    that    Plaintiff    had    the    following    severe    impairments:    "spine disorder/osteoarthritis; migraine headache; history of carpal tunnel syndrome; and obesity." (*Id.*)  At step four, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairments listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).  (*Id.* at 27.)

At step five, ALJ Troope determined that Plaintiff had the RFC to perform light work with various limitations.  Among those limitations, ALJ Troope found that Plaintiff was "limited to frequently handling, including gripping, with the bilateral upper extremities." (*Id.*)  Based upon the testimony of a VE, the ALJ found that Plaintiff could perform her past relevant work as an Accounts Receivable Supervisor and a Medical Coder/Biller.  (*Id.* at 34.) The ALJ alternatively found that Plaintiff could perform other jobs existing in the national economy in significant numbers.  (*Id.* at 35.)  Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act.  (*Id.* at 36.)

In her first action before this Court, Plaintiff raised three issues: whether the ALJ properly decided that Plaintiff's mental impairments were not severe; (2) whether the ALJ properly decided Plaintiff's limitations related to her upper extremities; and (3) whether the ALJ properly evaluated Plaintiff's credibility.  (Dkt. No. 19-13 at 81.)  The Court found that reversal was warranted as to all three issues.  (*Id.*)  However, the Court only directly addressed Plaintiff's third claim on the basis that "Plaintiff's credibility [factors] in the

ALJ's reasoning related to her mental impairments and her upper extremity limitations, . . . ." (*Id.*)  The Court concluded that, although there was "serious doubt" as to whether Plaintiff was disabled, the ALJ failed to properly evaluate Plaintiff's credibility regarding her subjective symptom testimony.  (*Id.* at 97-98.)  The Court also concluded that:

> The ALJ in part relied on her determination of Plaintiff's credibility in her analysis of the remaining two issues raised by the parties, i.e., Plaintiff's mental impairments being nonsevere and Plaintiff's upper extremity limitations.  (AR 28-33.)  Because the issue of Plaintiff's credibility is being remanded, the Court exercises its discretion to remand these two other issues as well without analysis beyond what has already been discussed. Because the record could benefit from further development, especially as various doctors' opinions appear to cite to medical records not present in the record and the ALJ did not discuss one of Plaintiff's treating physicians, Dr. Mendelson, this case does not warrant an immediate award of benefits.

(*Id.* at 97.)  The Court reversed and remanded "for further administrative proceedings consistent with this Order."  (*Id.* at 98.)

In the current action, Plaintiff now argues that, in the most recent disability determination, ALJ Floyd overstepped the scope of this Court's remand order.  Plaintiff points to the fact that the original ALJ (Troope) included migraine headaches and a history of carpel tunnel syndrome among Plaintiff's medically determinable severe impairments, but ALJ Floyd did not.  Plaintiff argues that "[t]he absence of any explanation why the ALJ deleted previously found medically determinable impairments in the consideration of testimony that included limitations from those impairments violates the law of the case or

8

rule of mandate." (Dkt. No. 23 at 5.)  Plaintiff contends that ALJ Floyd improperly adjusted Plaintiff's RFC in that "[t]he prior decision rejected Perez's subjective complaints of pain and limitation and adopted a medical baseline.  The ALJ did not explain what new evidence led to a reconsideration of the medical baseline under the rule of mandate." (*Id.* at 6.)

The Court agrees with Plaintiff that ALJ Floyd made findings at step three that were neither challenged nor expressly rejected by the Court in resolving the prior federal action. However, in this case, the Court made clear in its remand order that it was remanding the matter *as to all three issues* raised by the Plaintiff, including one issue at step three (challenging ALJ Troope's conclusion that Petitioner's mental impairments were not severe), and at step five (challenging the ALJ's determination of Plaintiff's limitations related to her upper extremities.  (Dkt. Nio. 19-13 at 97-98.)

The Court expressly addressed only the third issue (the assessment of Plaintiff's credibility) on the basis that it affected the ALJ's determinations as to the other issues.  (Dkt. No. 19-13 at 81, 97.)  The consequence of that finding was that the ALJ upon remand was required to reconsider findings at steps three and five.  Because these issues were inherently intertwined with the ALJ's credibility determinations, the ALJ was not precluded from reassessing the circumstances at those stages.  Thus, the law of the case doctrine did not apply.  *See Poppa v. Astrue*, 569 F.3d 1167, 1170-71 (10th Cir. 2009) (holding that the law of the case doctrine did not preclude an ALJ from making a new RFC determination where the district court's remand order permitted a reassessment of the claimant's credibility, which was inherently intertwined with the new RFC determination).

For substantially similar reasons, the ALJ did not violate the rule of mandate by revising the previous determinations at step three.  Nothing in the Court's remand order precluded the ALJ upon remand from reconsidering Plaintiff's severe impairments and functional abilities; the Court expressly concluded that those issues were intertwined with

the original ALJ's erroneous credibility determination.  Indeed, this Court specifically found that "the record could benefit from further development" on remand; ALJ Floyd developed the record further and made findings consistent with those developments (such as Plaintiff's intervening carpal tunnel surgery on both hands).

Thus, because the remand order refrained from imposing restrictions on the ALJ's ability to reassess stage three, the rule of mandate was not violated by the ALJ's revised determination of Plaintiff's severe impairments or RFC.  *See Stacy*, 825 F.3d at 568-69 (holding that an ALJ's revised step four determination did not violate the rule of mandate because the district court issued a remand order that was "expansive"); *see also see also Harrison v. Berryhill*, No. EDCV 18-81-E, 2018 WL 5304794, at *3-4 (C.D. Cal. Oct. 24, 2018) (ALJ did not violate either the doctrine of law of the case or the rule of mandate where "there was new evidence before the ALJ on remand, including medical records post-dating the prior administrative decision," the plaintiff's challenge to the ALJ's review of the medical record and adverse credibility determinations "informed both ALJs' [severity] and [RFC] determinations," and "[i]n previously remanding the matter, the Court chose not to reach these other issues except insofar as to determine that reversal for the payment of benefits was not warranted.").

In sum, the ALJ did not violate the law of the case doctrine or the rule of mandate by reassessing Plaintiff's substantial impairments at step three or Plaintiff's limitations in determining her RFC.

**II.    The ALJ Failed to Evaluate Plaintiff's Credibility Regarding Her Subjective Symptom Statements and Testimony**

### A.    Plaintiff's Subjective Statements

On April 16, 2014, Plaintiff completed a Pain Questionnaire.  (Dkt. No. 19-7 at 21-22.)  Plaintiff said she had pain all day, every day, "sometimes even with meds."  (*Id.* at 21.)  She said she had pain in her head, neck, throughout her back, right leg, and both hands.  (*Id.*)  She described the pain as "aching, piercing, needles and pins, tingling, numb, muscle spasms, sharp, [excruciating]."  (*Id.*)  She stated the pain affects her sleep and she needs to take a nap once a day for two to three hours.  (*Id.*)  She added that she dreads going to bed because she cannot get comfortable "because of the pain" and that when she wakes up in the morning, she cannot feel her hands.  (*Id.* at 22.)

Plaintiff also completed a Function Report on the same day.  (*Id.* at 23-30.)  She wrote she has carpal tunnel syndrome which makes it painful to write or type.  (*Id.* at 23.)  After falling and hitting her head, she said she is unable to focus, has blurred vision, and has neck and back pain.  (*Id.*)  She indicated she needed six more epidural shots and hand surgery.  (*Id.*)  She also listed having anxiety and depression.  (*Id.*)  She said her daily activities included showering, eating, listening to a bible app, napping, putting some dishes in the dishwasher, looking through mail, putting dirty clothes in a hamper, sitting, adding to the grocery list, and going to doctor's appointments.  (*Id.*)  She also mentioned she sleeps a lot because of her pain pills and depression.  (*Id.*)  Prior to the injury, she said she enjoyed working, reading, social gatherings, playing volleyball, she visited her sister, was active in her church, took guitar lessons, and went to painting classes.  (*Id.* at 24.)

Plaintiff said after the injury, she quit everything.  (*Id.*)  She stated that she still attends church, but now she only listens to the worship and sermon.  (*Id.* at 27.)  She said she has

11

become antisocial, is grouchy, cries, does not want to talk or get dressed up, and she now feels "fat, old and ugly." (*Id.* at 28.) She also said she fears her injuries will get worse, she will die young, and she will be poor and homeless. (*Id.* at 29.) She explained she struggles with or cannot handle certain items of personal care like tying shoelaces, buttoning clothes, turning faucets, curling her hair, and chopping food. (*Id.* at 24.) She can prepare sandwiches, cereal, cookies, fruit, salads, pasta, and frozen burritos. (*Id.* at 25.) She can still drive. (*Id.* at 26.) She can shop but she finishes within thirty minutes. (*Id.*) She said she can manage her money but that she had not paid bills in months. (*Id.*)

### B.    Plaintiff's Testimony at the Original Hearing in 2016

Plaintiff testified at the hearing before ALJ Troope on January 12, 2016. (Dkt. No. 19-3 at 42-81.) She said she lives in an apartment with her mother and daughter. (*Id.* at 50.) Plaintiff has a college degree in Political Science. (*Id.* at 52.) She is right hand dominant and stated she has difficulties using her right hand. (*Id.* at 51.) She gave examples of activities she either struggles with or cannot do including fastening her bra, tying her shoelaces, chopping vegetables, and performing repetitive motions. (*Id.*) She said she can write "something minimal" like a phone number but not a letter. (*Id.*) She did not believe she could work at a computer for more than thirty minutes. (*Id.* at 68.) Plaintiff can still drive an automatic car but because of the pain in her hands, she sometimes drives with only one hand. (*Id.* at 53.) She sometimes has difficulty with the pedals because of pain in her right leg that extends to her toes. (*Id.*)

The ALJ questioned Plaintiff on her history of carpal tunnel syndrome. Specifically, she asked if before the fall at work Plaintiff "had carpal tunnel surgery or any other more basic treatment of that condition?" (*Id.* at 61-62.) Plaintiff responded: "No, ma'am. No surgery." (*Id.* at 62.) Plaintiff said doctors in the past recommended the surgery, but she did not think it was approved. (*Id.*) Instead, she was put on modified duty at work and her work

12

load was decreased, but she still did not finish her work on time. (*Id.* at 64-65.) She said she did not have surgery after the fall at work either. (*Id.* at 62.)

Plaintiff has not worked since November 7, 2012, has not looked for work, and has no source of income. (*Id.* at 53-54, 59.) Her mother helps her financially and she does not pay rent. (*Id.* at 54.) She received General Relief for one month and food stamps for one year. (*Id.*) She testified that for the last year and a half, she got food from a food bank. (*Id.*) She also testified that she filed a Workers' Compensation case related to her injury on November 7, 2012 and received a settlement in August 2015 and another settlement in December 2015. (*Id.*) The settlement included a buyout of Plaintiff's future medical treatment. (*Id.* at 70.) She has been using private insurance since the settlement. (*Id.*)

Plaintiff described her fall at work in November 2012. (*Id.* at 56.) When asked what parts of her body were injured, she responded: "my back, my mid back, my neck, my back, my head, my arms, my hands." (*Id.*) Plaintiff said she experienced headaches after the fall but did not recall being diagnosed with migraines after the fall. (*Id.* at 57.) She said she thought she was diagnosed with migraines "a long time ago." (*Id.*) She did not remember if she was taking any special medications for migraine headaches. (*Id.*) One of Plaintiff's chiropractors prescribed a back brace for her which she said she had on at the hearing. (*Id.* at 57-58.)

Plaintiff testified about a myriad of symptoms that prevented her from working. She experiences pain every day. (*Id.* at 58.) She is not able to do things she used to be able to do. (*Id.*) Her medications help in some ways but create other problems through side-effects like nausea, constipation, and diarrhea. (*Id.*) She cannot concentrate because pain interrupts her sleep. (*Id.*) She worries about bills and providing for her family. (*Id.*) She feels like she is not the same anymore. (*Id.*)

13

She also discussed her mental impairments.   Plaintiff said she has depression and anxiety and that she alternates between feeling depressed, anxious, stressed, and also feeling nothing.  (*Id.* at 59.)  She said she received a prescription for depression medication three years ago, after the fall in November 2012.  (*Id.* at 59-60.)  When asked if the medication helped, she related that it sometimes does but that her prescription dosage had also been increased.  (*Id.* at 60; *see also* Dkt. No. 19-10 at 20; Dkt. No. 19-11 at 119-20, 123.)  When asked if she had any other treatment like counseling, she explained she was allowed to see one doctor one time under Workers' Compensation which is when she was first prescribed medication.  (Dkt. No. 19-3 at 60.)  She said another request for authorization of treatment was denied.  (*Id.*)  Insurance later gave her names of doctors she contacted but she had yet to receive a call back.  (*Id.*)  Her primary care provider, Dr. Shah, whom she was scheduled to see in two weeks, had promised to find her a doctor close to home.  (*Id.* at 60-61.)

The ALJ then further questioned Plaintiff about her headaches.   Plaintiff said she experienced headaches every day.  (*Id.* at 61.)  She admitted to experiencing them once a week before the November 2012 incident, but said they are now constant.  (*Id.*)  When asked about her headache medication this time, she remembered she takes gabapentin, prescription strength ibuprofen, and Tylenol.  (*Id.*)  She forgot to mention she received injections to her head and neck.  (*Id.*)

Plaintiff also discussed the treatment that she received for her back pain.  She stated that surgery had not been recommended.  (*Id.* at 62.)  She listed the treatments she had received, including aqua therapy, acupuncture, "physical therapy, exercises, the medicine, and the creams, and the hot pads, the cold with the ice machine, Heat Waves.  I believe it's called Heat Waves.  I have that machine at home.  I believe that's about it.  Maybe a couple more things I'm forgetting what their names are."  (*Id.*)

14

The ALJ asked Plaintiff to discuss the medications that she takes. (*Id.* at 63.) The ALJ noted they had already covered prescription strength ibuprofen, Tylenol, gabapentin, and Zoloft or Sertraline. (*Id.* at 62.) Plaintiff added she takes allergy medications and Pantoprazole for bloating, but she thought that was it. (*Id.* at 63.)

## C. Plaintiff's Testimony in the Second Hearing on Remand (2020)

On March 12, 2020, Plaintiff testified in her second hearing before an ALJ (Floyd). (Dkt. No. 19-12 at 39.) In regard to her pain and symptoms, Plaintiff testified that she had "a lot of medical issues that cause me a lot of pain" and that she was "in pain constantly, since I wake up [until] I go to bed." (*Id.* at 42.) Plaintiff testified that the pain she experienced caused anxiety, which led to weight gain and depression. (*Id.*) Additionally, Plaintiff testified that she experienced "difficulties with my headaches and the neck pains, my back pains, so I am seeing different, . . . therapists. My pain management doctors, all the medication that I take makes me sick." (*Id.* at 43.)

Plaintiff explained that she received epidural steroid injections that "alleviate[] the pain a little bit and the tingling that I have, like on my right side, right now," but that the relief from the injections does not last long. (*Id.*) Plaintiff also testified that she had plantar fasciatus in one of her feet and received a steroid injection for that. (*Id.*) Plaintiff testified as well that she had back pain and wore a back brace, which was also painful. (*Id.* at 44.) Depending on how many medical appointments Plaintiff had in a given day, she felt "tired all day long and in pain and with my meds . . . I feel sick all the time." (*Id.*)

Plaintiff testified that she had recently had three surgeries, including a hysterectomy and carpal tunnel surgery on both hands, the left hand in September or October 2019 and the right hand in January 2020. (*Id.* at 45.) Although Plaintiff anticipated that she would be undergoing a second carpal tunnel surgery, she testified that her left hand had "gotten a little

15

bit better." (*Id.*)  Prior to the carpal tunnel surgery, Plaintiff "couldn't even open a water bottle and I couldn't open a can."  It was also difficult for her to "handle[] different objects or carry stuff." (*Id.*)

Plaintiff was also unable to handle small objects like buttons because it was "very difficult, very painful and my hands were of course tingling and in pain and pins and needles, . . . ." (*Id.* at 46.)  Prior to the surgery, Plaintiff's daughter had to help Plaintiff get dressed.  (*Id.* at 46-47.)  Plaintiff was able to make herself microwavable macaroni and cheese but could not stay standing in the kitchen for more than 10 or 15 minutes at a time.  (*Id.* at 48.)  Plaintiff could walk approximately a block and a half or two blocks.  (*Id.* at 49.)

### D.   Applicable Law

An ALJ must make two findings before determining that a claimant's pain or symptom testimony is not credible.[4]  *Treichler v. Comm'r of SSA*, 775 F.3d 1090, 1102 (9th Cir. 2014).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036).  "Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms" and those reasons must be supported by substantial evidence in the record.  *Treichler*, 775 F.3d at 1102

---

[4]     Effective March 28, 2016, SSR 16-3p superseded SSR 96-7p, which required the ALJ to assess the credibility of a claimant's statements.  SSR 16-3p focuses on the existence of medical cause and an evaluation of "the consistency of the individual's statements about the intensity, persistence, or limiting effects of symptoms with the evidence of record without consideration of the claimant's overall 'character or truthfulness'."  *See* Guide to SSA Changes in Regulations and Rulings 2016-17, June 2017.  The Ninth Circuit has acknowledged that SSR16-3p is consistent with existing precedent that requires that the assessments of an individual's testimony be focused on evaluating the "intensity and persistence of symptoms" after the ALJ has found that the individual has medically determinable impairments that could reasonably be expected to produce those symptoms.  *Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017).  ALJ Floyd discussed this change in the regulations and her application of SSR 16-3p.  (Dkt. No. 19-12 at 18-19.)

(citation omitted); *see also Marsh v. Colvin*, 792 F.3d 1170, 1174 n.2 (9th Cir. 2015); *Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1161 (9th Cir. 2008) (court must determine "whether the ALJ's adverse credibility finding . . . is supported by substantial evidence under the clear-and-convincing standard").

In weighing a plaintiff's credibility, the ALJ may consider a number of factors, including: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony . . . that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation omitted). The ALJ must also "specifically identify the testimony [from the claimant that] she or he finds not to be credible and . . . explain what evidence undermines the testimony." *Treichler*, 775 F.3d at 1102 (quoting *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)). "General findings are insufficient." *Brown-Hunter*, 806 F.3d at 493 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

### E.   Analysis

Pursuant to SSR 16-3p, ALJ Floyd engaged in the "two-step process" articulated above. (Dkt. No. 19-12 at 17.) ALJ Floyd also discussed her approach to that analysis and noted that the Social Security Administration "has eliminated the use of the term 'credibility' from the sub-regulatory policy, as the regulations do not use this term." (*Id.* at 18.) ALJ Floyd then described step two of the credibility analysis as "an evaluation of the intensity and persistence of symptoms to determine the extent to which they limit the ability to perform work-related activities" without tying that discussion to the ultimate question to be answered in step two, namely, "provid[ing] specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms."

1    *Treichler*, 775 F.3d at 1102; *see also Brown-Hunter*, 806 F.3d at 493 ("General findings are

2    insufficient.").

3

4        Applying these principles, ALJ Floyd specifically found that Plaintiff's "medically

5    determinable impairments could reasonably be expected to cause the alleged symptoms,"

6    however, Plaintiff's "statements concerning the intensity, persistence and limiting effects of

7    these symptoms are not entirely consistent with the medical evidence and other evidence in

8    the record. . . ."  (Dkt. No. 19-12 at 18.)  ALJ Floyd did not state that she found evidence of

9    Plaintiff malingering.

10

11       ALJ Floyd then discussed the considerable objective medical evidence, giving more

12   weight to some medical assessments than others, without any discussion as to how that

13   evidence undermined Plaintiff's credibility as to the intensity, persistence, and limiting

14   effects of Plaintiff's symptoms, or any reference to specific assertions made by Plaintiff

15   about her symptoms. (*See generally*, dkt. no. 19-12 at pp. 5-21.) In fact, ALJ Floyd provided

16   no analysis discussing which medical evidence was inconsistent with Plaintiff's subjective

17   statements of pain, and otherwise gave no express reasons for rejecting Plaintiff's credibility

18   concerning her subjective symptom testimony.  *Treichler*, 775 F.3d at 1102 (the ALJ must

19   "specifically identify the testimony [from the claimant that] she or he finds not to be credible

20   and . . . explain what evidence undermines the testimony.").

21

22       More specifically, ALJ Floyd first summarized a November 2014 evaluation of

23   Plaintiff by Jeffrey T. Ho, D.O. Board-certified in physical medicine and rehabilitation.

24   Examination of Plaintiff's cervical spine and extremities revealed no evidence of

25   abnormalities but did show "tenderness to palpation to the trapezius, cervical and thoracic

26   paraspinal muscles." (Dkt. No. 19-12 at 19; *see also* Dkt. No. 19-9 at 6.)  Various types of

27   neuropathy were not present.   An examination of Plaintiff's bilateral upper and lower

28   extremities, cervical and upper thoracic paraspinal muscles revealed no radiculopathy.  Dr.

18

1  Ho "diagnosed the claimant with thoracic back pain, fatigue, limb weakness and numbness."

2  ALJ Floyd did not discuss what effect, if any Dr. Ho's determinations had on any subjective

3  statement or testimony Plaintiff made about Plaintiff's symptoms.  (Dkt. No. 19-12 at 19.)

4

5         ALJ Floyd next summarized the results of an October 2014 examination of Plaintiff by

6  Albert Simpkins, Jr., a doctor Board-certified in orthopedic surgery.  (*Id.*; Dkt. No. 19-9 at

7  54-72.)   Dr. Simpkins concluded that an examination of the cervical spine "revealed a

8  normal attitude of comfort, with shoulders level" and no muscle spasms, but "[t]here was

9  tenderness to palpation of the lower cervical region, as well as the paracervical musculature

10 on the right and the bilateral upper trapezius musculature."   Other tests by Dr. Simpkins

11 showed no presence of cervical radiculopathy, normal spinal alignment, clear skin with no

12 scars in the midline of the low back, and a normal gait.  (Dkt. No. 19-12 at 19.)   Dr.

13 Simpkins also reviewed and discussed a MRI scan of Plaintiff's cervical spine, and Dr.

14 Simpkins findings regarding the cervical spine that "support not only exertional and postural

15 restrictions, but restrictions relative to use of the arms as well." (*Id.* at 19-20.)  An additional

16 MRI scan of the lumbar spine reviewed by Dr. Simpkins "further support[ed] exertional and

17 postural limitations described in the residual functional capacity herein." (*Id.* at 20.)  Dr.

18 Simpkins diagnosed Plaintiff "with cervical spine chronic sprain/strain, superimposed upon

19 degenerative disc disease, lumbosacral spine chronic sprain/strain, superimposed upon

20 degenerative disc disease" and concluded that Plaintiff "had reached maximal medical

21 improvement with 5 to 8% impairment of the whole person." (*Id.*)  Dr. Simpkins made

22 recommendations as to Plaintiff's functional limitations based upon the findings above.  (*Id.*)

23 ALJ Floyd gave the opinion of Dr. Simpkins "some weight, to the extent it is consistent with

24 his findings during his evaluation of the claimant as previously discussed, and the claimant's

25 residual functional capacity," but did not discuss what effect, if any, Dr. Simpkins's

26 determinations had on any subjective statement or testimony made by Plaintiff about

27 Plaintiff's symptoms.  (*Id.*)

28

ALJ Floyd also discussed a neurological evaluation of Plaintiff conducted in August 2019 before Dr. Maze, a Board-certified medical examiner.  Relevant to Plaintiff's subjective pain symptoms, during this examination she complained of pain with her cervical spine.  (*Id.*)  Dr. Maze diagnosed Plaintiff with "chronic pain syndrome and noted claimant had an unremarkable examination with findings most consistent with cervical sprain syndrome."  (*Id.* at 21.)  Dr. Maze also provided a functional assessment of Plaintiff.  (*Id.*)  ALJ Floyd gave the opinion of Dr. Maze weight "to the extent it is consistent with the results of his evaluation of the claimant," but found the doctor's assessed functional capacity for Plaintiff to be "inconsistent with the claimant's residual functional capacity and this portion of the opinion is given little weight."  (*Id.*)  ALJ Floyd did not discuss what effect, if any, Dr. Maze's determinations had on any subjective statement or testimony by Plaintiff about Plaintiff's symptoms.

Next, ALJ Floyd referenced "a complete orthopedic examination in August 2019 before the consultative examiner Kambiz Hannani, M.D., a Board-certified orthopedic surgeon."  (*Id.*)  Dr. Hannani made several findings of either normal or limited movement in Plaintiff's various extremities.  Dr. Hannani diagnosed Plaintiff "with low back and neck pain with radiculitis, left knee internal derangement and bilateral shoulder mild to moderate impingement" and this doctor also provided a functional assessment.  ALJ Floyd gave the opinion of Dr. Hannani weight "to the extent it is consistent with the results of the evaluation of the claimant as previously discussed, and the claimant's residual functional capacity."  (*Id.*)  ALJ Floyd did not discuss what effect, if any, Dr. Hannani's determinations had on any subjective statement or testimony by Plaintiff about Plaintiff's symptoms.

ALJ Floyd then briefly discussed results of specific strength testing done on Plaintiff, and stated that Plaintiff was noted to have normal muscle strength during an examination in January 2020.  (*Id.*)  ALJ Floyd also discussed a comprehensive neurological evaluation Plaintiff underwent in April 2013 before Gregory B. Kirkorowicz, M.D.  ALJ Floyd again

20

1    summarized the doctor's findings, which were mostly unexceptional, without any discussion

2    whether any of those findings contradict the subjective statements of pain made by Plaintiff.

3    (*Id.* at 22.)   ALJ Floyd discussed a comprehensive initial pain management evaluation in

4    May 2014 before Peter Mendelsohn, M.D., at which time Plaintiff "complained of constant

5    throbbing headaches, dizziness, dull sharp pain in the neck radiating to both hand and dull

6    sharp pain in the low back radiating to the right foot" and "was diagnosed with cephalgia,

7    occipital neuralgia, cervicalgia, cervical radiculitis, herniated disc, cervical spine, disc

8    degeneration cervical spine, cervical facet arthropathy and was provided with injections."

9    (*Id.*)   ALJ Floyd also discussed conflicting medical records.   An August 2017 MRI scan of

10   Plaintiff's lumbar spine "showed grade I spondylolisthesis at L4-5 level and disc disease and

11   facet hypertrophy at multiple levels," however, "examinations of the claimant noted her back

12   had normal or full range of motion and was non-tender or without pain" and Plaintiff "denied

13   joint stiffness, joint swelling, sciatica and arthritic pain."   (*Id.*)   None of these facts were

14   expressly applied to ALJ Floyd's credibility determination.

16         Finally, ALJ Floyd summarized Plaintiff's medications and doses Plaintiff had taken

17   to alleviate pain, which included Tylenol, and "a series of injections for neck and back pain."

18   ALJ Floyd noted that Plaintiff reported "80% pain relief with previous injections" and an

19   ability "to function well while taking current pain medications."   (*Id.* at 23.)   The ALJ noted

20   that Plaintiff had reported being "stable on [the] current pain regimen" and that a July 2017

21   examination revealed no visible scars or other symptoms of neck pain beyond some reported

22   sensitivity.   (*Id.*)   ALJ Floyd then discussed the various RFC assessments made by medical

23   professionals, more conflicting medical assessments, particularly regarding carpal tunnel

24   syndrome, and the weight ALJ Floyd was giving to each of them.   (*Id.* at 23-25.)

26         None of the above factors articulated by the ALJ "specifically identify the testimony

27   [from the claimant that] she or he finds not to be credible and . . . explain what evidence

28   undermines the testimony."   *Treichler*, 775 F.3d at 1102; *Holohan*, 246 F.3d at 1208.   The

21

record shows that ALJ Floyd expressly found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [Plaintiff's] symptoms are not entirely consistent with the medical evidence and other evidence in the record" (Dkt. No. 19-12 at 18), but then went on to simply make general findings justifying her RFC determination. There is no discussion of which subjective statements or testimony ALJ Floyd found not to be credible and which portions of the medical record the ALJ was relying on to reject them. As already noted, "[g]eneral findings are insufficient." *Brown-Hunter*, 806 F.3d at 493; *Reddick*, 157 F.3d at 722.

## III.   The Error is Not Harmless and Remand for Further Proceedings is Warranted

The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter*, 806 F.3d at 492 (internal citations omitted). Additionally, the decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). A district court may remand for an award of benefits when the following three conditions are satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). The third condition "incorporates . . . a distinct requirement of the credit-as-true rule, namely that there are no outstanding issues that must be resolved before a determination of disability can be made." *Id.* n.26. However, even if the three conditions are met, district court's retain "flexibility" in determining the appropriate remedy and may remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is,

1  in fact, disabled within the meaning of the Social Security Act." *Burrell v. Colvin*, 775 F.3d

2  1133, 1141 (9th Cir. 2014) (quoting *Garrison*, 759 F.3d at 1021).

3

4  Here, this Court previously found legal error in ALJ Troope's reasons for rejecting

5  Plaintiff's subjective symptom statements and testimony. (Dkt. No. 19-3 at 93-97.) The

6  Court also found that the error "was not harmless because it is not clear that Plaintiff would

7  still have been found not disabled if her credibility had been properly assessed." (*Id.* at 97.)

8  The Court candidly stated that "[t]here is serious doubt as to whether Plaintiff is disabled,"

9  but nevertheless concluded that "the ALJ erred in her analysis of Plaintiff's credibility."

10 Accordingly, the case was "remanded for further administrative proceedings consistent with

11 this opinion." (*Id.* at 98.)

12

13 However, the proceedings on remand did not shed any clearer light on Plaintiff's

14 credibility. As discussed in detail above, on remand ALJ Floyd made the finding that

15 Plaintiff's subjective statements about pain were not entirely consistent with the record (Dkt.

16 No. 19-12 at 18) but the ALJ did not provide any analysis or justify that credibility finding *at*

17 *all*. Consequently, the Court is no better able than it was at the time of its prior remand order

18 to now say that further administrative proceedings would not serve a useful purpose or that

19 the ALJ would be required to find Plaintiff disabled on remand. Accordingly, the Court

20 finds that ALJ Floyd's error was not "'inconsequential to the ultimate nondisability

21 determination," or that "the agency's path may reasonably be discerned," and remands for

22 further proceedings. *Brown-Hunter*, 806 F.3d at 492; *Garrison*, 759 F.3d at 1020.

23

24 ALJ Floyd's assessment concerning the remaining two issues raised by Plaintiff

25 (Plaintiff's ability to perform past relevant work and perform other work) relied on her

26 determination of Plaintiff's RFC, which itself partly relied on ALJ Floyd's determination

27 that Plaintiff's subjective statements about pain were not entirely consistent with other

28 evidence in the record. (Dkt. No. 19-12 at 17-25.) Because the issue of Plaintiff's credibility

is again being remanded, the Court exercises its discretion to remand these two other issues as well.  As the ALJ erred by failing to provide any analysis of Plaintiff's credibility, this case is remanded for further administrative proceedings consistent with this Order.

## CONCLUSION

For the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED AND REMANDED for further administrative proceedings consistent with this Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Amended Memorandum Opinion and Order on counsel for plaintiff and counsel for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: February 23, 2022

KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE